UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZURICH AMERICAN INSURANCE
COMPANY,

          Plaintiff,

      v.

SSA MARINE, INC., et al.,

          Defendants.

Case No.  22-cv-03260-AMO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 49

This is an insurance subrogation action arising out of a claim for damaged cargo at the Port of Oakland.  Before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction.  The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for June 13, 2024, was vacated.  *See* Civil L.R. 7-1(b).  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Defendants' motion for the following reasons.

## I.  BACKGROUND[1]

On or about May 24, 2021, Mediterranean Shipping Company S.A. ("MSC") issued a bill of lading, Sea Waybill No. MEDUU1902201, for the export of a shipment of cargo from Oakland, California, to Jebel Ali, United Arab Emirates.  Bereny Decl. Ex. A (ECF 49 at 22).  The MSC Sea Waybill limits liability to $500 per package or unit of freight under the Carriage of Goods by

---

[1] "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  This is not strictly true where, as here, Defendants bring a factual attack under Rule 12(b)(1).  In a factual challenge to subject matter jurisdiction under Rule 12(b)(1), the Court may consider evidence outside the operative complaint in resolving whether it has jurisdiction without converting the motion into a motion for summary judgment.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Sea Act (46 U.S.C. §30701, et seq., "COGSA").  *See id.* § 7.2.2 (ECF 49 at 29).  The MSC Sea Waybill described the cargo as consisting of one 20-foot dry container, Container No. CAAU2071717, and the contents were described as "5 CRATE(S) OF WATER FILTRATION EQUIPMENT AND ACCESSORIES" and "TOTAL NUMBER OF PACKAGES: 5."  *Id.* (ECF 49 at 22).  On June 7, 2021, the cargo was delivered by semi-truck to the Oakland International Container Terminal ("OICT") operated by Defendants SSA Marine, Inc., and SSA Terminals, LLC (together, "SSA").  Miller Decl. ¶ 6 (ECF 49 at 44).  SSA received the cargo and placed it into a stack in the OICT yard for export on board the MSC vessel "MVCANZU" on Voyage No. 119R.  *Id.*

On June 10, 2021, SSA's mobile crane, operated by Defendant Kibreab Weldeab, struck a stack of containers at the Port of Oakland, which knocked down the container of water filtration equipment.  Second Amended Compl. (ECF 29, "SAC") ¶ 7.  Plaintiff Zurich American Insurance Company ("Plaintiff" or "Zurich") was the insurer of the cargo.  SAC ¶ 1.  Zurich insured the cargo against loss or damage, and it was obligated to pay $997,605.52 on account of the loss of the subject cargo after application of a $500 policy deductible.  SAC ¶ 10.

Zurich initiated this lawsuit against SSA Marine in 2022 (ECF 1) and added the remaining Defendants through subsequent amendments to the pleading (*see* ECF 12; ECF 29).  The now-operative SAC alleges a negligence cause of action against all three Defendants.  *See generally* SAC.  Zurich predicates this Court's subject matter jurisdiction solely on diversity jurisdiction.  SAC ¶ 5.

## II.    DISCUSSION

SSA moves to dismiss the SAC under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis that COGSA limits Defendants' liability to $500 per package such that the amount in controversy falls below the $75,000 threshold for federal subject matter jurisdiction based on diversity of citizenship.

### A.    Legal Standard

Under Rule 12(b)(1), dismissal is appropriate if the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  An attack on subject matter jurisdiction "may be facial or factual."  *Safe*

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction[,]" while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Allegations of jurisdictional facts "are not afforded presumptive truthfulness; on a motion to dismiss for lack of subject matter jurisdiction, the court may hear evidence of those facts and resolve factual disputes where necessary." *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014) (quotations and citation omitted).[2] "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). To justify dismissal for failure to adequately allege the $75,000 amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

**B.    Analysis**

SSA argues that the Court lacks subject matter jurisdiction because Zurich's claims are subject to statutory limitations of liability under COGSA and the applicable contract of carriage.[3] COGSA permits a carrier to limit its liability " 'only if the shipper is given a fair opportunity to opt for a higher liability by paying a correspondingly greater charge.' " *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1255 (9th Cir. 2005) (quoting *Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*, 155 F.3d 1165, 1168 (9th Cir. 1998)). "The fair opportunity requirement is meant to give the shipper notice of the legal consequences of failing to opt for a higher carrier

---

[2] Contrary to Zurich's contention, *see* Opp. (ECF 52) at 5-6, the Court may consider extrinsic evidence to establish whether it has subject matter jurisdiction over this case.

[3] As a purported subrogee, Zurich stands in the same shoes as the "Merchant" in the MSC Sea Waybill and is likewise limited by the same amount, not to exceed $500 per package. *Cummings v. United States*, 704 F.2d 437, 439 (9th Cir. 1983) ("Because the insurance company as subrogee stands in the shoes of the insured, it is the real party in interest in the insured's suit to the extent of the subrogation").

United States District Court
Northern District of California

liability." *Travelers Indem. Co. v. Vessel Sam Houston*, 26 F.3d 895, 898 (9th Cir. 1994).  The carrier bears "the initial burden of producing prima facie evidence showing that it provided notice to the shipper that it could pay a higher rate and opt for higher liability." *Kukje Hwajae Ins. Co.*, 408 F.3d at 1255 (citation omitted).  The carrier can generally meet this burden "by showing that the language of COGSA Section 4(5) is contained in the bill of lading." *Travelers Indem. Co.*, 26 F.3d at 898 (citation omitted).  "The burden then shifts to the shipper to prove it was denied such an opportunity." *Kukje Hwajae Ins. Co.*, 408 F.3d at 1255.

Here, the contracting parties expressly agreed to incorporate the $500 default package limitation of liability of COGSA into the MSC SeaWaybill unless a higher value was declared by the shipper and ad valorem charges paid.  The MSC Sea Waybill particularly describes these terms in Paragraph 7.2.2, "Where COGSA applies by virtue of clause 6, neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US$500 per package or per customary freight unit." *See* Ex. A (ECF 49 at 29).  The MSC Sea Waybill further provides in Paragraph 7.3, "Higher compensation than that provided for in this Sea Waybill may be claimed only when, with the written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked 'Declared Value' on the front of this Sea Waybill and ad valorem charges paid." *Id.*  The Waybill shows that the shipping party did not elect or declare any higher value for the cargo, nor did it pay any higher "ad valorem" charges for the shipment and would not otherwise be entitled to relief from the statutory default limit of liability of $500 per package.  *See* Ex. A (ECF 49 at 21); *see also* Miller Decl. ¶ 6 (ECF 49 at 44) (confirming that SSA never received any notification of a higher value for the subject cargo).  Thus, SSA has carried its burden of showing that the shipper received a fair opportunity to avoid the $500 per package limitation of liability.

Zurich does not contend that it was denied the opportunity to avoid the COSGA limitation.  Instead, it argues that, even if SSA is entitled to limit its liability pursuant to COGSA, Defendant Weldeab is not similarly entitled to the same limitation of liability because the moving papers do not mention him.  Opp. (ECF 52) at 6-8.  Zurich insists that SSA's failure to argue for the extension of statutory and contractual limitations on liability to Zurich's claim against Weldeab

1    means that the claim against Weldeab should not be dismissed.  *Id.* (citing, e.g., *Baptist v.*

2    *Robinson*, 143 Cal. App. 4th 151, 160 (2006)).  Zurich implies that Weldeab may not have been

3    working in the course and scope of his employment at the time of the incident, which could

4    forestall the applicability of respondeat superior.  This argument fails.

5           First, Zurich's position is inconsistent with its operative pleading.  *See* Opp. (ECF 52) at 8;

6    SAC ¶ 7 ("while Defendants, and each of them, were unloading another vessel [] via mobile crane

7    at the Oakland International Container Terminal at the Port of Oakland, Defendants' crane

8    operator, Mr. Weldeab, diverted the crane to the location where the Property was stored to take or

9    make a telephone call, and in the course of that action, struck the container consisting of the

10   Property").  Neither side presents evidence contradicting Zurich's allegation that Weldeab was

11   SSA's agent.⁴  The Court accepts Zurich's allegations that Weldeab acted as SSA's agent as true

12   in the absence of any evidence to the contrary.

13          Second, Waybill Section 4.2 included terms that specifically extended the COSGA

14   limitations to SSA's agents.  *See* ECF 49 at 26-27 ("every [] servant, agent and subcontractor shall

15   have the benefit of all terms and conditions of whatsoever nature contained herein or otherwise

16   benefitting the Carrier under this Sea Waybill, as if such terms and conditions were expressly for

17   their benefit.").  Because Weldeab was operating as SSA's agent, the COGSA limitations also

18   apply to Weldeab.  *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 450 (9th Cir.

19   1993) (concluding that port operators and stevedores may be entitled to enjoy the same $500 per

20   package limitation of liability where the bill of lading included a "Himalaya clause," which

21   extended statutory and contractual limitations on liability to those working on behalf of a carrier).

22          Therefore, because the $500 COGSA package limitation applies in this case, Zurich's

23   maximum damages cannot exceed $500 per each of the five packages, or $2,500.  Based on the

24   clearly defined statutory limitation of liability set forth in COGSA, Zurich's damages do not

25   _____

26   ⁴ Though Zurich takes issue with its inability to depose Weldeab, it fails to account for its agency
     in failing to obtain the evidence necessary to disprove the application of respondeat superior.  The
27   Court permitted further fact discovery following the case management conference held on January
     11, 2024, with the close of fact discovery set for February 1, 2024.  *See* ECF 48.  Zurich did not
28   seek judicial intervention pursuant to either the Court's Civil Standing Order or the District's Civil
     Local Rules to obtain Weldeab's testimony.

exceed the threshold jurisdictional minimum of $75,000, and the Court lacks subject matter jurisdiction.

**III.    CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to dismiss for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: August 29, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**